800 F.2d 1494
 123 L.R.R.M. (BNA) 2781, 105 Lab.Cas. P 12,063
 In the Matter of the Arbitration ASSOCIATED PLUMBING &
MECHANICAL CONTRACTORS OF SACRAMENTO, INC.,
Petitioner/Cross-Respondent/Appellee,
v.
LOCAL UNION NO. 447, UNITED ASSOCIATION OF JOURNEYMEN AND
APPRENTICES OF THE PLUMBING AND PIPE FITTING
INDUSTRY (LOCAL 447), Respondent,
and
Atlas Mechanical, Inc. (Atlas), Respondent/Cross-Petitioner/Appellant.
 No. 85-2289.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 12, 1986.
Decided Sept. 30, 1986.
 
 Jack W. Urch, Sacramento, Cal., for Local Union No. 447, et al.
 Norman H. Kirshman, Kirshman & Harris, Los Angeles, Cal., for Associated Plumbing & Mechanical Contractors of Sacramento, Inc.
 Appeal from the United States District Court for the Eastern District of California.
 Before GOODWIN, NORRIS, and BRUNETTI, Circuit Judges.
 NORRIS, Circuit Judge:
 
 
 1
 This action was brought by appellee Associated Plumbing and Mechanical Contractors of Sacramento, Inc., a multi-employer bargaining association (the "Association"), to confirm an arbitrator's award against Atlas Mechanical Inc., ("Atlas") for failure to contribute to a Contract Administration Fund pursuant to a multi-employer collective bargaining agreement. The district court granted the Association's motion for summary judgment, ruling that the collective bargaining agreement bound the individual employers to arbitrate disputes concerning the agreement. Reviewing the arbitrator's award under the "limited standard" of review set forth in the Steelworkers Trilogy,[1] the district court confirmed the arbitrator's award. Atlas' appeal presents the question whether the arbitration clause in the collective bargaining contract applies to a dispute between the Association and one of its member-employers. Because we believe it does not, we reverse.[2]
 
 
 2
 * Whether the Association's dispute with Atlas is arbitrable or subject to judicial resolution is a question of law to be judicially determined. AT & T Technologies, Inc. v. Communications Workers of America, --- U.S. ----, 106 S.Ct. 1415, 1420, 89 L.Ed.2d 648 (1986). As an exception to the general rule of contract interpretation that ambiguous agreements be construed to favor judicial resolution rather than arbitration of disputes, see United States v. Moorman, 338 U.S. 457, 462, 70 S.Ct. 288, 291, 94 L.Ed. 256 (1950), the Supreme Court in the Steelworkers Trilogy adopted a presumption of arbitrability as a rule of construction for collective bargaining agreements.[3] This special presumption is rooted in "[t]he federal policy of settling labor disputes by arbitration," 363 U.S. at 596, as expressed in the Labor Management Relations Act, Sec. 203, 29 U.S.C. Sec. 173(d) (1982). See 363 U.S. at 596, 80 S.Ct. at 1360. Through this judicial presumption arbitration has become a "substitute for industrial strife" and "part and parcel of the collective bargaining process." John Wiley & Sons v. Livingston, 376 U.S. 543, 549, 84 S.Ct. 909, 914, 11 L.Ed.2d 898 (1964) (quoting United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 578, 80 S.Ct. 1347, 1350, 4 L.Ed.2d 1409 (1960)).
 
 
 3
 Atlas argues that Steelworkers' presumption of arbitrability should not apply to disputes between a multi-employer bargaining association and its individual employer-members. Atlas relies heavily on Schneider Moving & Storage Co. v. Robbins, 466 U.S. 364, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984), which held that the presumption of arbitrability was inapplicable to disputes between management and the trustees of employee benefit funds established under a collective bargaining agreement. In Schneider the Supreme Court reasoned that the Steelworkers presumption of arbitrability was constructed to "further the national labor policy of peaceful resolution of labor disputes." Id. at 371, 104 S.Ct. at 1849. Therefore, the Court concluded, there is "less to commend" the presumption when the dispute is not between an employer and a union. Id. at 372, 104 S.Ct. at 1849. The
 
 
 4
 [a]rbitration promotes labor peace because it requires the parties to forgo the economic weapons of strikes and lockouts. Because the trustees of employee-benefit funds have no recourse to either of those weapons, requiring them to arbitrate disputes with the employer would promote labor peace only indirectly, if at all. We conclude, therefore, that the presumption of arbitrability is not a proper rule of construction in determining whether arbitration agreements between the union and the employer apply to disputes between trustees and employers, even if those disputes raise questions of interpretation under the collective bargaining agreements.
 
 
 5
 Id.
 
 
 6
 We believe that Schneider controls the case before us. Like the trustees in Schneider, Atlas has no recourse to a strike or lockout which would have any impact on the Association. Similarly, though in both cases "the employer has economic weapons at its disposal, they would serve little purpose in [such] disputes...." 466 U.S. at 372 n. 13, 104 S.Ct. at 1849 n. 13. Following Schneider, therefore, the Steelworkers presumption of arbitrability should not apply to disputes between an employer bargaining association and a member-employer it represents.
 
 
 7
 The Association argues that Schneider is distinguishable. According to the Association, Schneider is inapposite because the trust funds involved there "existed independently of the collective bargaining agreement in issue." Appellee's Brief at 8. Moreover, the Association contends, the trustees were not parties to the collective bargaining agreement, nor had they "appointed either the employer or the union as an agent for the purposes of negotiating such agreement." Id. However, the Association fails to explain why the mere fact that the trustees were not parties to the collective bargaining agreement is, in itself, sufficient to render inapplicable the Steelworkers presumption.[4] We find the Association's attempt to distinguish Schneider unpersuasive.
 
 II
 
 8
 Having decided that there is no legal presumption that the dispute between Atlas and the Association is arbitrable, we must decide whether the parties intended to require arbitration of such disputes. When a district court's decision is based upon analysis of the contractual language and application of the principles of contract interpretation, the decision is a matter of law and reviewable de novo. Miller v. Safeco Title Ins. Co, 758 F.2d 364, 367 (9th Cir.1985). In deciding this issue we must apply the traditional rule of contract interpretation favoring judicial dispute resolution, determining whether "the intention of parties to submit their contractual disputes to [arbitration was] made manifest by plain language." Moorman, 338 U.S. at 462, 70 S.Ct. at 291. In this case, the language upon which the district court relied to bind Atlas to arbitration is ambiguous at best, and the peculiar structure of the grievance proceedings leading up to the selection of an arbitrator provides evidence of contemporaneous party interpretation belying the conclusion that Atlas assented to arbitration.
 
 
 9
 The only evidence assertedly expressing Atlas' intent to agree to arbitrate disputes is found in the arbitration provision of the collective bargaining agreement. That provision states that "[i]t is the intention of the parties to this Agreement to settle problems that may arise" through a dispute resolution procedure culminating in arbitration. Master Labor Agreement, art. 21, Sec. 1-2 (emphasis added). While the collective bargaining agreement does not expressly define the term "party," analysis of the agreement's language and structure leads us to conclude that Atlas is not a "party" and thus did not "manifest by plain language" an intent to arbitrate disputes with the Association. In several instances the agreement uses the term "parties" to refer only to Local 447 and the Association. For example, the title page recites that this is a "Labor Agreement between Local Union No. 447 ... and The Associated Plumbing and Mechanical Contractors of Sacramento, Incorporated." Additionally, the Signature Page provides in relevant part that "[t]his Agreement shall be deemed to be executed when the parties covered hereby shall have affixed their signatures hereto." Underneath this provision on the Signature Page, only the signatures of M.J. Rotz, Business Manager of Local 447, and Paul J. Bianchi Jr., President of the Association, are affixed.
 
 
 10
 Moreover, several other references to "parties" concerning their respective rights and duties in the collective bargaining agreement clearly refer to the Association and the Union. For example, Article 22 governing the effective and termination dates of the agreement provides that the termination date may be extended "by mutual consent of both parties," Article 22, Sec. 1 (emphasis added), and it also states that it "is mutually understood by both parties" that the plumbing industry may negotiate a shorter work week if other industries do so. Id. at Sec. 3. And where the agreement was intended to affect the individual employers, it clearly referred to the obligations of "the Employer and the Union," not the "parties." See, e.g., Article 16, Sec. 2; Article 18, Sec. 1; Article 19, Secs. 1-2. In contrast to the term "parties," "Employers" was specifically defined in the collective bargaining agreement to include "[a]ny firm, person, corporation or association employing men dispatched by Local Union No. 447 ..." Article 1, Sec. 3. Thus, it appears that the agreement specifically refers to the individual employers whenever they incur specific obligations. Because the arbitration clause does not unambiguously bind Atlas to its provisions, we cannot conclude that Atlas unequivocally has made manifest its intent to forgo judicial resolution of its disputes with the Association. See Moorman, 338 U.S. at 462, 70 S.Ct. at 291.
 
 
 11
 Furthermore, the very structure of the grievance proceedings leading to the selection of an impartial arbitrator seems inconsistent with any intention by the parties to bind Atlas to arbitration of a dispute with the Association. The arbitration provision is structured to balance the interests of the Association on one hand and the Union on the other. The Association and Local 447 each select five members of the Joint Conference Board which hears initial disputes under the agreement.[5] Thus if a dispute with the Association is adjudicated by the Joint Conference Board under the terms of the agreement, an individual employer enjoys no direct representation; rather, the individual employer is forced to rely upon the union for representation on the Joint Conference Board. If the union disagrees with the individual employer's construction of the agreement in a dispute between the employer and the employer association, the union can refuse to arbitrate the claim by having its five voting members on the Joint Conference Board vote with the association. In these circumstances, neutral arbitration is completely precluded. The union, of course, owes no statutory or contractual duty of fair representation to the individual employers. Because the arbitral machinery makes no provision for representation of the individual employer in a dispute with the Association, the agreement lacks a fundamental characteristic of arbitration agreements--the selection of the arbitrators by the parties to the dispute. Atlas, as an individual employer, cannot reasonably be expected to depend upon union representation in arbitrating a dispute with the Association over interpretation of the agreement. The Court in Schneider found a similar lack of direct representation to be evidence of the absence of any agreement to arbitrate, concluding that "[i]t is unreasonable to infer that the parties ... intended the trustees to rely on the Union to arbitrate their disputes with the employer." 466 U.S. at 375, 104 S.Ct. at 1851.
 
 CONCLUSION
 
 12
 Because the collective bargaining agreement does not "manifest by plain language" the parties' intent to require disputes between an employer and its bargaining representative to be settled by arbitration, we reverse the district court's award of summary judgment and remand with instructions to enter judgment for Atlas.
 
 
 13
 REVERSED.
 
 
 
 [1]
 See United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960)
 
 
 [2]
 A grant of summary judgment is reviewable de novo. Lupert v. California State Bar, 761 F.2d 1325, 1327 (9th Cir.), appeal dismissed and cert. denied, --- U.S. ----, 106 S.Ct. 241, 88 L.Ed.2d 251 (1985). Summary judgment is proper only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)
 
 
 [3]
 "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." AT & T v. Communications Workers, 106 S.Ct. at 1419 (quoting United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 1252-53, 4 L.Ed.2d 1409 (1960)
 
 
 [4]
 Indeed, the Association understates the trust funds' connection to the collective bargaining agreement in Schneider. The collective bargaining agreement specifically "required [employers] to participate in the [trust funds], and incorporated the terms of the two trust agreements by reference." 466 U.S. at 369, 104 S.Ct. at 1847
 
 
 [5]
 Although the conference board provision states that five members of the board shall be selected by the "Employer," it is beyond dispute that the term "Employer" in this context refers to the Association and not the individual employers. It is undisputed that the Association selected the "Employer's" complement of board members whenever a dispute went to the board