**TEAMSTERS LOCAL 315,**
Plaintiff–Appellee,

v.

**UNION OIL COMPANY OF CALIFOR-
NIA, Defendant–Appellant.**

No. 87–2449.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 11, 1988.

Decided Sept. 2, 1988.

Randolph C. Roeder and Karen L.
Mathes, Littler, Mendelson, Fastiff &
Tichy, San Francisco, Cal., for defendant-
appellant.

Kenneth C. Absalom and Kenneth N. Silbert, Beeson, Tayer, Sibert & Bodine, San Francisco, Cal., for plaintiff-appellee.

Before PREGERSON, BOOCHEVER and BEEZER, Circuit Judges.

BEEZER, Circuit Judge:

Union Oil Company of California (Unocal) appeals the district court's grant of summary judgment in favor of Teamsters Local 315 (Union) compelling Unocal to arbitrate a dispute concerning the medical fitness of an employee who was not allowed to return to work. We reverse.

## FACTS

Unocal and the Union are parties to a collective-bargaining agreement that provides for arbitration of grievances. This agreement contains strict limitations on the scope of arbitrable disputes. The Union seeks to compel arbitration of a dispute arising out of Unocal's refusal to return an employee, Norman Simon, to work after a medical leave. Simon suffered an industrial injury and was unable to return to work. He received sick-pay allowance in accordance with the collective-bargaining agreement until May 1986 when all available benefits credited to him were used.

Simon's physician cleared him to return to work. Upon review of the employee's job responsibilities, however, Unocal's physician determined that Simon was not medically qualified to perform his job. Pursuant to its physician's recommendation, Unocal refused to allow Simon to return to work. Nonetheless, he remained employed by Unocal, albeit an inactive employee, and continued to accrue seniority pursuant to Article III of the agreement. The Union filed a grievance alleging that Unocal's refusal to return Simon to work violated the agreement's seniority provisions, although the seniority provisions do not specifically refer to disputes involving the physical fitness of employees to work. Unocal re-

fused to arbitrate the issue since Simon was still an employee and continued to accrue seniority. Moreover, it contended that its decision that Simon was not medically qualified to return to work was a management decision not specifically abridged by the collective-bargaining agreement.

The Union filed a petition to compel arbitration in California Superior Court. Unocal removed the case to federal district court. After cross-motions for summary judgment and a hearing, the district court granted the Union's motion for summary judgment compelling Unocal to arbitrate the underlying dispute. Recognizing that the collective-bargaining agreement allowed arbitration only for express violations, the court formulated the issue before it as "whether the Union has made a bona fide allegation that Unocal's actions violated the seniority provisions of the collective bargaining agreement." The court admitted that the question was a "close one."

Relying on *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), the district court concluded that "the instant dispute falls within the scope of the arbitration clause, and is one which the parties have agreed to arbitrate." The district court conceded that the arbitration provision in *American Mfg. Co.* was broader than the arbitration clause in the present case and that "at first blush it does not appear that disputes involving returning an employee to work would fall within the purview of the seniority provisions of the collective bargaining agreement." Nonetheless, the court reasoned that "the [*American Mfg. Co.*] Court implied that a dispute which is nearly identical to the instant dispute between the Union and the employer falls within the coverage of a seniority provision containing terms which are nearly identical to those contained in the collective bargaining agreement between the Union and Unocal." The court accordingly granted the Union's motion for summary judgment "because doubts should be resolved in favor of arbitrability." Unocal timely appeals.

## ANALYSIS

A grant of summary judgment is reviewed *de novo*. *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir.1986). The issue before us is whether the underlying dispute —whether Simon is medically fit to return to work—is arbitrable under the terms of the collective-bargaining agreement.

In *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), the Supreme Court outlined important principles from the *Steelworkers Trilogy* [1] governing petitions to compel arbitration under collective-bargaining agreements. The first principle is that " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit.' " *Id.* at 648, 106 S.Ct. at 1418 (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352-53, 4 L.Ed.2d 1409 (1960)). The duty to arbitrate depends solely on the parties' contractual agreement to settle certain type of disputes by arbitration. *See Francesco's B., Inc. v. Hotel & Restaurant Employees*, 659 F.2d 1383, 1387 (9th Cir.1981). We must thus determine whether the resisting party has, in fact, agreed by contract to submit the dispute to the arbitration process. *Id.*

The second principle is that the question of arbitrability, *i.e.*, whether the collective-bargaining agreement creates a duty to arbitrate a particular grievance, is an issue for the court to decide, not the arbitrator. *AT & T*, 475 U.S. at 649, 106 S.Ct. at 1419.

Another principle set forth by the Supreme Court is that if a contract contains an arbitration clause,

> there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Id.* 475 U.S. at 650, 106 S.Ct. at 1419 (quoting *Warrior & Gulf*, 363 U.S. at 582-83, 80 S.Ct. at 1353). The Court reasoned further that this presumption of arbitrability was particularly applicable where the arbitration clause was as broad as the one before it, which provided for arbitration of "any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder." *AT & T*, 475 U.S. at 650, 106 S.Ct. at 1419. With such broad arbitration clauses, the Court continued, "[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id.* (quoting *Warrior & Gulf*, 363 U.S. at 584-85, 80 S.Ct. at 1354).[2]

In the instant case, Unocal argues that the strict arbitration clause and other express provisions in the collective-bargaining agreement, as well as the bargaining history, provide forceful evidence that it never intended to submit the medical qualifications of employees to arbitration. Because the Union has failed to allege a violation of an express provision of the agreement, Unocal concludes, arbitration may not properly be compelled.

The Union responds that the underlying grievance is within the scope of the agreement's grievance and arbitration provisions. In particular, the Union maintains that Unocal's refusal to allow the employee to return to work violates the agreement's seniority provisions. The Union reasons further that the absence of language in the agreement referring to the right of an employee to return to work after a disability does not remove the grievance from the scope of the arbitration procedures. In addition, it maintains that the bargaining

---

1.  *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprises Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

2.  A fourth principle outlined by the *AT & T* Court is that in deciding whether a particular grievance is arbitrable, a court is not to rule on the potential merits of the underlying claims. 475 U.S. at 649, 106 S.Ct. at 1419.

history does not establish that the underlying grievance is outside the scope of the grievance and arbitration provisions of the agreement.

### A. *Express Language of the Collective–Bargaining Agreement*

■ Because arbitration is a matter of contract, we must ascertain whether the parties have agreed by contract to submit the underlying dispute to the arbitration process. Our first inquiry is into the language of the agreement. The contract language has remained virtually unchanged since the inception of the bargaining relationship in 1971.

Article IX of the collective-bargaining agreement sets forth the procedures for grievance and arbitration. The opening paragraph states: "Any employee or group of employees with their Union representative if so desired shall have the right to present grievances which allege violations of any of the *express terms or provisions* of this Agreement.... The subjects of general rates of pay, general hours of work and *general working conditions* shall *not* be proper subjects for grievances hereunder." *Articles of Agreement,* Art. IX, § A [hereinafter, *Agreement*] (emphasis added). Procedures are provided "[t]o arbitrate a grievance which raises a *bona fide* question concerning the interpretation or application of any *express provision* of this Agreement." *Agreement,* Art. IX, § D (emphasis added).

The most specific limitation on the scope of arbitrable disputes is found in Article IX, § E, ¶ 3: *"Only* actions of the Company which are alleged to be violations of duties or obligations *expressed in one or more of the written provisions* of this Agreement shall be subject to the grievance and arbitration procedure." (Emphasis added). This strict restriction on arbitration is quite different than the sweeping terms of most broad, "standard form" arbitration clauses that allow arbitration of all disputes between the parties as to the meaning, interpretation, and application of an agreement's provisions. *See, e.g., AT & T,* 475 U.S. at 650, 106 S.Ct. at 1419;

*American Mfg. Co.,* 363 U.S. at 565, 80 S.Ct. at 1345; *United Food and Commercial Workers Union v. Lucky Stores, Inc.,* 806 F.2d 1385, 1386 (9th Cir.1986); *Haig Berberian, Inc. v. Cannery Warehousemen,* 535 F.2d 496, 498 (9th Cir.1976).

■ The management rights clause is likewise severely narrow in what matters may properly be subject to arbitration:

It is understood and agreed upon by the Union that, *except as abridged by a specific provision of this Agreement,* the Company reserves and retains the right to exercise solely and exclusively, *all lawful power* to *manage and control* its business *and its work force....* The exercise of all lawful management rights *which are not abridged by a specific provision* of this Agreement shall *not* be subject to arbitration under Article IX above.

*Agreement,* Art. XXII, § B (emphasis added). This clause exempts from arbitration management decisions that are made pursuant to its unabridged authority. Further limitations to the agreement are found in Article XXII: "The *express provisions* of this Agreement shall be the *sole source* of any rights which may be asserted against the Company in arbitration under Article IX above." *Agreement,* Art. XXII, § A (emphasis added). To submit the underlying dispute to arbitration, the Union must properly allege a violation of a specific provision in the agreement.

The collective-bargaining agreement contains no language that abrogates or abridges Unocal's authority over managing its workforce in terms of deciding whether a given employee is physically and medically fit to return to work. Nor does the agreement specifically make such a determination subject to arbitration. The terms of the agreement make clear that arbitration is properly invoked only when Unocal allegedly violates an express written provision. In its brief, the Union concedes that "the Agreement is silent with respect to the right of employees to return to work after disability." Indeed, the language of the contract taken as a whole demonstrates that Unocal retains such authority. *See*

*Agreement,* Art. XXII, § B (reserving and retaining the right to "manage and control ... its work force"); Art. IX, § A (stating that the subject of "general working conditions shall not be proper subject[ ] for grievances").[3] In its entirety, the arbitration provisions here are clearly far more limited than in standard form clauses.

■■■ Aware that it must allege a violation of an express provision of the collective-bargaining agreement, the Union contends that Unocal has violated the employee's seniority rights under Article III of the contract by not reinstating the disabled employee. This contention, however, is conclusory and thus insufficient to allege the existence of an arbitrable controversy. The Union fails to allege how Simon's express seniority rights under the agreement have been violated. Indeed, the Union concedes in its brief and petition to compel arbitration that Simon *continues to accrue seniority.* Accordingly, the Union's allegation of a violation of Article III without supporting facts that would support such a violation is merely conclusory.

The agreement's seniority provisions in Article III contain nothing about disputes over the medical fitness of an employee to return to work.[4] Given the express language of the agreement and the Union's acknowledgment that Simon's seniority continues to accrue, the Union fails to make out a violation of an express provision.

■■■ In its brief, the Union attempts to circumvent the express language of the seniority provisions by alleging violation of an implied term of Article III:

The Union's position is that the seniority provisions entitle able bodied employees to work, and that the Company deprives an employee of seniority rights by unilaterally determining the employee is unfit to work. The fact that an employee continues to accrue seniority while disabled does not, in the Union's view, mean that an able bodied employee who is refused the right to work has received all benefits of the Seniority provisions. Indeed, in the Union's view, the employee has been deprived of the most important consequence of seniority—the right to earn a living.

Because arbitration is a matter of contract and the agreement here only allows arbitration violations of express written provisions, the Union's argument fails. As it concedes, the seniority provisions of the collective-bargaining agreement contain nothing regarding an implied "right to work." The strict limitations in the arbitration provisions plainly indicate that Unocal never acceded to arbitration of implied terms. Allowing arbitration of any implied contractual terms would violate the specific limits of the agreement. Accordingly, the Union fails to demonstrate exactly how Simon's seniority provisions were violated pursuant to the express provisions of the agreement.

The Union draws our attention to *United Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343 (1960), maintaining that it is controlling here. Although similar at first blush, *American Mfg. Co.* contains a crucial distinction that distinguishes it from the case at hand. In *American Mfg. Co.,* an employee left work due to an

---

**3.** Other provisions reinforce Unocal's unwillingness to abandon its authority over the medical qualifications of its workforce. *See, e.g., Agreement,* Art. XVI, § A (stating the payment of sick pay allowance will cease "[w]hen the employee returns to work or is released by a doctor to return to work and subject to verification by a physician designated by the Company"); Art. XVI, § K (stating that "sick pay allowances must be supported by proper medical evidence as required by the Company and are subject to verification by the Company").

**4.** Under Article III, which defines seniority rights, employees accrue Company Seniority,

Terminal Seniority, and Job Classification Seniority. Company Seniority is used to determine eligibility for vacations, holidays, sick pay, and other fringe benefits. Terminal Seniority is used to determine transfers and promotions. Job Classification Seniority is used to determine reduction in staffing. Seniority is broken by (1) resignation; (2) discharge for cause; (3) failure to return to work within seven days after being recalled from layoff; (4) failure to return to work at the expiration of a leave of absence; and (5) any layoff that exceeds twelve consecutive months. None of these contractually-based methods for breaking seniority had occurred.

injury and while off work brought an action for compensation benefits. The case was settled, with the employee's physician expressing the opinion that the employee was 25% "permanently partially disabled." The union later filed a grievance that charged that the employee was entitled to return to his job because of the seniority provision of the collective-bargaining agreement. The company refused to arbitrate and the union sought to compel arbitration. The company argued, *inter alia,* that this type of dispute was not arbitrable under the collective-bargaining agreement.

In stark contrast to the instant case, the collective-bargaining agreement in *American Mfg. Co.* contained a "standard form" arbitration clause that provided for arbitration of "all disputes between the parties 'as to the meaning, interpretation and application of the provisions of this agreement.' " *Id.* at 565, 80 S.Ct. at 1345. The agreement also contained a provision that the company would employ and promote employees on the principle of seniority. *Id.* at 565–66, 80 S.Ct. at 1345–46.[5] The Court reasoned that:

> The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitration. It is confined to ascertaining *whether the party seeking arbitration is making a claim which on its face is governed by the contract.*

*Id.* at 567–68, 80 S.Ct. at 1346 (emphasis added). In considering the arbitrability issue, the Supreme Court observed that the union claimed that the company had violated a specific provision of the contract, whereas the company maintained it had not violated the clause. *Id.* at 569, 80 S.Ct. at 1347. The Court concluded that

> there was, therefore, a dispute between the parties as to "the meaning, interpretation and application" of the agreement. Arbitration should have been ordered. When the judiciary undertakes to determine the merits of a grievance under the

guise of interpreting the grievance procedure of collective bargaining agreements, it usurps a function which under that regime is entrusted to the arbitration tribunal.

*Id.*

A crucial distinction between *American Mfg. Co.* and the instant case is the breadth and scope of the arbitration provisions. Unlike the standard form arbitration clause in *American Mfg. Co.,* the agreement between the Union and Unocal strictly limits arbitration to "[o]nly actions of the Company which are alleged to be violation of duties or obligations expressed in one or more of the written provisions of this Agreement." *Agreement,* Art. IX, § E, ¶ 3. Moreover, as discussed *supra,* Unocal has expressly reserved its unabridged authority to manage its workforce. The Union maintains that the scope of the grievance procedures here and in *American Mfg. Co.* are similar, drawing this panel's attention to other provisions in the agreement. *E.g., Agreement,* Art. IX, § A (stating that "any employee ... shall have the right to present grievances which allege violations of any of the express terms of this Agreement"); Art. IX, § D (providing arbitration procedures "[t]o arbitrate a grievance which raises a bona fide question concerning the interpretation or application of any express provisions of this Agreement."). However, reading the agreement as a whole, as discussed *supra,* compels the conclusion that the arbitration provisions here are far more limited than the standard form clause in *American Mfg. Co.* Because of the strict arbitration provisions expressly set forth in the agreement, *American Mfg. Co.* is distinguishable. Arbitration is a matter of contract; we may not simply apply the teaching of *American Mfg. Co.* without construing the agreement entered into between the Union and Unocal. *See Teamsters Union Local 287 v. Frito–Lay, Inc.,* 849 F.2d 1210, 1211–12 (9th Cir.1988) (construing in favor of arbi-

---

**5.** In its opening brief, Unocal is overzealous in its characterization of its seniority provisions. It stated: "[T]he parties' agreement is *utterly devoid* of any procedures governing promotion—in the seniority clause or any where

else." (Emphasis in original). However, the seniority clause provides: "Promotions shall be made on the basis of qualifications and Terminal Seniority." *Agreement,* Art. III, § A, ¶ 2.

trability a standard form clause). In this agreement, the parties bargained for and adopted extremely restrictive arbitration provisions. We are bound to give effect to these strict provisions.

### B. *Bargaining History*

Our second inquiry is into the bargaining history between the parties. We have reasoned that "[t]he very nature of a collective bargaining agreement requires that it be read in the light of bargaining history and the history of the parties' own interpretations." *Communications Workers of America v. Pacific N.W. Bell Telephone Co.*, 337 F.2d 455, 459 (9th Cir.1964) (footnotes omitted); *see also American Mfg. Co.*, 363 U.S. at 570, 80 S.Ct. at 1364 (Brennan, J., concurring) (stating that "[w]ords in a collective bargaining agreement ... are to be understood only by referent to the background which gave rise to their inclusion"); *Syufy Enters. v. Northern Calif. State Ass'n of LATSE Locals*, 631 F.2d 124, 126 (9th Cir.1980), *cert. denied*, 451 U.S. 983, 101 S.Ct. 2314, 68 L.Ed.2d 839 (1981) (stating that "it is proper for courts to consider evidence of the intent of the parties, particularly bargaining history, in determining the scope of arbitration clauses").

█ An examination of the bargaining history reveals that the Union has attempted to modify the strict arbitration clauses during negotiations. Barlow H. Thompson, Unocal's General Manager of Human Resources in the Refining & Marketing Division, participated in the negotiations for all six collective-bargaining agreements entered into between the Union and Unocal since 1971. In his Declaration, Thompson states:

> While other employers who have collective bargaining agreements might be willing to allow "any question concerning the interpretation of the agreement" to be submitted to an arbitration, [Unocal] was (and has remained) adamantly opposed to such a provision. Thus, it bargained for and obtained several restrictions on the types of disputes that could

> be submitted to the grievance and arbitration procedure.

During negotiations for the first agreement in 1971, Unocal bargained for and obtained the present strict arbitration clause. According to Thompson, during the subsequent negotiations in 1974, the Union attempted to expand the grievance procedure and allow more types of disputes to be grievable. Such attempt was rejected and the grievance and arbitration procedure remained the same.

In the 1977 negotiations, Thompson states that the Union proposed a major modification to the limitation in Art. IX, § E, ¶ 3, namely, allowing any question concerning the interpretation of the contract to be grievable. Unocal rejected the Union's proposal. The Union dropped the demand and paragraph 3 continued to contain a strict limitation: only actions of the Company alleged to be violations of express provisions of the contract are subject to the grievance and arbitration procedure.

█ Most important, the bargaining history between the parties demonstrate that Unocal never intended to submit disputes concerning physical and medical qualifications of its employees to an arbitrator or any other third party. According to Thompson's Declaration:

> The Company wants to ensure that it and it alone has the right to determine whether an employee is physically and/or medically qualified to perform a particular job. The reason for this is that, because it is the Company that is ultimately responsible for the consequences of having an employee do a job when he is not physically qualified to do it, it should be the Company that decides when that employee is physically and/or medically qualified to do the job.

The management rights clause served in part to insure this authority to "exercise, solely and exclusively, all lawful power to manage ... its work forces." That clause stated: "The exercise of all lawful management rights which are not abridged by a *specific provision* of this Agreement shall not be subject to arbitration under Article IX above." *Agreement*, Art. XXII, § B

(emphasis added). At no time during the bargaining history has there been a specific provision adopted that has abridged or limited Unocal's authority to determine the medical fitness of an employee to return to work.

During the 1980 negotiations, the Union proposed the following limit on Unocal's ability to determine the medical qualifications of its workforce:

> If a report of a Company appointed physician adversely affects the employment status of a permanent employee, such employee may have a physician of his own selection conduct a second examination. A copy of this report is to be furnished to the Company.
>
> If the Company's physician and the employee's physician disagree, they shall select an independent third physician who is expert in the ailment being considered.
>
> If the third physician considers the original report to be erroneous, any action taken by the Company therefrom, shall be revoked.
>
> The fee of the third physician will be shared equally by the employee and the Company.

Unocal rejected the proposal.

The bargaining history between the Union and Unocal demonstrates that Unocal bargained for and obtained strict arbitration clauses and abridgment of its management rights only by specific provisions. Such bargaining history constitutes forceful evidence that Unocal neither intended to broaden the agreement's strict arbitration clause, nor intended to abrogate its authority to determine the medical fitness of its workforce.

## CONCLUSION

We have acknowledged that the Supreme Court has "adopted presumption of arbitrability as a rule of construction for collective

bargaining agreements." *Associated Plumbing & Mechanical Contractors of Sacramento, Inc. v. Local Union No. 447,* 811 F.2d 480, 481 (9th Cir.1987). The Supreme Court has reasoned that an order to arbitrate a specific dispute should not be denied " 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' " *AT & T,* 475 U.S. at 650, 106 S.Ct. at 1419 (quoting *Warrior & Gulf,* 363 U.S. at 582–83, 80 S.Ct. at 1352–53).

Nonetheless, this case involves a far more limited collective-bargaining agreement than is found in typical labor contracts. The strict and narrow terms of the collective-bargaining agreement and the parties' bargaining history constitute " 'forceful evidence of a purpose to exclude the claim from arbitration' " *AT & T,* 475 U.S. 650, 106 S.Ct. at 1419 (quoting *Warrior & Gulf,* 363 U.S. at 585, 80 S.Ct. at 1354). Such forceful evidence rebuts the presumption of arbitrability and demonstrates that Unocal did not agree to submit its authority to determine the medical qualification of its workforce to arbitration.[6]

Unocal cannot be required to submit to arbitration the underlying dispute—whether Simon is medically fit to return to work—when it has not agreed to so submit. *See AT & T,* 475 U.S. 648, 106 S.Ct. at 1418; *Warrior & Gulf,* 363 U.S. at 582, 80 S.Ct. at 1352–53. Unocal was careful to bargain for and obtain extremely limited arbitration provisions in which it did not surrender any of its authority to manage its workforce. As we have reasoned when reviewing a very broad and sweeping arbitration clause:

> [The company] was free to negotiate an arbitration provision as broad or narrow as it wished "for there is no compulsion in law requiring [it] to include any such promises in its agreement." Wise or not,

---

**6.** We note that the *AT & T* Court reasoned that such forceful evidence rebutting the presumption of arbitrability is required where the arbitration claim is as broad as the one then before it, which provided arbitration of " 'any differences arising with respect to the interpretation

of this contract or the performance of any obligation hereunder.' " 475 U.S. at 650, 106 S.Ct. at 1419. As discussed *supra,* the arbitration provisions here are in stark contrast to such sweeping "standard form" arbitration clauses.

a deal is a deal. "[C]ourts cannot make for the parties better agreements than they themselves have been satisfied to make."

*Lucky Stores,* 806 F.2d at 1386 (citations omitted); *see also American Mfg. Co.,* 363 U.S. at 570, 80 S.Ct. at 1364 (Brennan, J., concurring) (stating that "[t]he parties are free to make [the promise to arbitrate] as broad or as narrow as they wish"). Here, the parties freely entered into a contract that provided an extremely strict arbitration clause. If the Union wants a broader arbitration provision, its arguments are better directed to the next time the collective-bargaining agreement is negotiated. *See Lucky Stores,* 806 F.2d at 1386. As the strict language stands now, Unocal has not agreed to submit the medical and physical qualifications of its employees to arbitration.

With regard to the Union's reliance on *American Mfg. Co.,* we conclude that a complete review of its facts and rationale demonstrates that it is distinguishable due to its sweeping "standard form" arbitration clause. Because arbitration is a matter of contract, we must construe the agreement entered into between the parties in light of the bargaining history.

Accordingly, we reverse and remand to the district court with directions to enter summary judgment for Unocal.

REVERSED.

PREGERSON, Circuit Judge, dissenting:

I respectfully dissent. Norman Simon, a member of Teamsters Local 315, suffered an industrial injury that prevented him from working. After a period of recuperation, Simon was cleared to return to work by his physician. But Union Oil's physician decided that Simon was not medically capable of performing his old job. Accordingly, Union Oil refused to reemploy Simon. However, Union Oil kept Simon on as an inactive employee—without pay—by allowing him to continue accruing seniority under Article III of the collective bargaining agreement.

Because Union Oil used the seniority status tactic to keep Simon "employed," Local 315's dispute involves more than a medical decision regarding Simon's ability to perform his old job. The dispute also involves the interpretation of the seniority provision of the collective agreement. Local 315 asserts

that the seniority provisions entitle able bodied employees to work, and that the Company deprives an employee of seniority rights by unilaterally determining the employee is unfit to work. The fact that an employee continues to accrue seniority while disabled does not, in the Union's view, mean that an able bodied employee who is refused the right to work has received all benefits of the Seniority provisions. Indeed, in the Union's view, the employee has been deprived of the most important consequence of seniority—the right to earn a living.

Brief for Appellee at 14–15.

Article IX, § D of the collective agreement provides a procedure "[t]o arbitrate a grievance which raises a bona fide question concerning the *interpretation* or *application* of any express provision of [the] Agreement." (Emphasis added.) A bona fide question raised by Local 315 is whether a medically fit employee who continues to accrue seniority can be denied work and a paycheck based on the unilateral decision of the company's physician. The answer to this question requires an interpretation of the extent of benefits that flow from the express seniority provisions of the collective agreement.

In that regard, I fail to see how this case is distinguishable from *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), one of the original Steelworkers Trilogy cases, which held a similar grievance to be arbitrable. There, as here, the union filed a grievance protesting the employer's refusal to allow a previously injured employee to return to work after he had been released to return to work by his physician. Further, in *American Manufacturing Co.* the union asserted that the employer's actions violated the se-

niority provision of the collective agreement. As in the present case, the seniority provision was silent as to a previously injured employee's right to return to work. Nevertheless, the Court held that, because there was "a dispute between the parties as to 'the meaning, interpretation and application' of the collective bargaining agreement[,] [a]rbitration should have been ordered." *Id.* at 569, 80 S.Ct. at 1347.

The majority is convinced that there is a substantial difference between the arbitration clause in this case and the clause in *American Manufacturing Co.* However, I believe that the distinction between the two arbitration clauses is inconsequential. In the instant case, the arbitration provision, Art. IX, § A, states: "Any employee or group of employees with their Union representative if so desired shall have the right to present grievances which allege violations of any of the *express terms or provisions of this Agreement....*" (Emphasis added.) The arbitration provision in *American Manufacturing Co.* stated: "[A]ny disputes, misunderstandings, differences or grievances as to the meaning, interpretation and application of the *provisions of this agreement* ... may be submitted to the Board of Arbitration for decision." *American Mfg. Co.* at 565 n. 1, 80 S.Ct. at 1345 n. 1 (emphasis added).

I see very little difference between the critical language of the two arbitration provisions. It seems to me that the phrase "provisions of this agreement," as used in *American Manufacturing Co.,* clearly refers to an express agreement.

We have been told that " '[a]n order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubt should be resolved in favor of coverage.' " *AT & T Technologies, Inc. v. Communication Workers of America,* 475 U.S. 643, 650, 106 S.Ct. at 1419 (1986) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960)). Local 315's argument that the seniority

provision has been violated because Simon has been denied an important consequence of seniority—the right to earn a living—is, to my mind, persuasive, and I cannot say with positive assurance that the arbitration clause at issue precludes the interpretation of the seniority provision advanced by Local 315.

The majority is also persuaded by Union Oil's version of its bargaining history with Local 315. However, the bargaining history indicates merely that Local 315 had not succeeded in negotiating an express provision to allow a third doctor to resolve medical disputes between an employee's physician and the company's physician. This circumstance does not compel the conclusion that Union Oil has succeeded in contracting for control over all employee medical decisions, no matter what union-negotiated rights are lost.

Finally, the management rights clause, on which Union Oil relies, is merely a catchall for non-bargained rights. It reads,

*except as abridged by a specific provision* of the Agreement, the Company reserves and retains the right to exercise, solely and exclusively, all lawful power to manage and control its business and its work forces.... The exercise of all lawful management *rights which are not abridged by a specific provision* of this Agreement shall not be subject to arbitration under Article IX above.

*Agreement,* Art. XXII, § B (emphasis added). This clause should be narrowly construed. *Cf. United Steelworkers,* 363 U.S. at 584, 80 S.Ct. at 1353–54 (the provision, "matters which are strictly a function of management shall not be subject to arbitration," refers "only to that over which the contract gives management complete control and unfettered discretion"). The fact that Union Oil, under the collective agreement, retained the right to exercise the power to manage and control its work force does not mean that it may with impunity deny an employee seniority benefits covered by the collective agreement.

The district court concluded that the dispute fell within the arbitration clause after resolving doubts in favor of arbitrability as

instructed by the Supreme Court in *American Manufacturing Co.* I would affirm the district court's decision granting Local 315's motion for summary judgment and ordering Union Oil to arbitrate.