**TEAMSTERS UNION LOCAL 287,**
**Plaintiff–Appellant,**

v.

**FRITO–LAY, INC., Defendant–Appellee.**

No. 87–2250.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 11, 1988.

Decided June 16, 1988.

Kenneth C. Absalom, Beeson, Tayer, Silbert & Bodine, San Francisco, Cal., for plaintiff-appellant.

Thomas H. Christopher, Kilpatrick & Cody, Atlanta, Ga., for defendant-appellee.

Before PREGERSON, BOOCHEVER and BEEZER, Circuit Judges.

BOOCHEVER, Circuit Judge:

Two issues concerning the arbitrability of a labor agreement confront us on this appeal. We must determine the effect of Article 15 Section 4 of the agreement, reserving the right not to arbitrate, and whether the transfer of work is a management right not subject to the grievance and arbitration procedure under Article 3. After considering the entire agreement we conclude that Article 15 Section 4 does not prevent arbitration, but we remand to the district court the question of whether the management rights clause precludes arbitration.

## FACTS

Frito–Lay, Inc. (Frito–Lay) employs members of Teamsters Union Local 287 (Union) at its San Jose, California production plant and warehouse. Frito–Lay and the Union signed a collective bargaining agreement effective March 30, 1986. Frito–Lay then transferred some of its transportation work to a plant and traffic center in Kern County, California. In January 1987, Frito–Lay laid off six Union drivers because of the work transfer.

The Union filed a grievance and later requested arbitration of the dispute. Frito–Lay initially refused to arbitrate, but in subsequent letters to the Union, Frito–Lay stated that it was willing to arbitrate but

intended to assert that its actions fell within traditional management rights and were thus not subject to arbitration. Additionally, it contended that arbitration under the agreement was not mandatory.

The district court granted summary judgment in favor of Frito–Lay, holding "the sole issue presented by these motions is whether the collective bargaining agreement ... between the parties contemplates mandatory arbitration in the event of certain types of disputes.... On the basis of Article 15, § 4 of the Agreement, the Court concludes that the parties did not bind themselves to mandatory arbitration."

## DISCUSSION

We review de novo the district court's grant of summary judgment. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 629–30 (9th Cir.1987). The relevant portions of the collective bargaining agreement read as follows:

### ARTICLE 3

### MANAGEMENT RIGHTS

Except as specifically abridged, delegated, granted or modified by this Agreement, or any supplementary agreements that may hereafter be made, all of the rights, powers and authority the Company had prior to the signing of this Agreement are retained by the Company, and remain exclusively and without limitation within the rights of management, which are not subject to the grievance procedure and/or arbitration.

. . . .

### ARTICLE 15

### GRIEVANCE AND ARBITRATION PROCEDURE

*Section 1.* A grievance is defined as a dispute, claim or complaint involving the interpretation or application of the terms of this Agreement.

. . . .

*Section 3.....*If such dispute is not resolved at the Board of Adjustment, such dispute shall be referred to arbitration. Both parties will, alternately, strike arbitrators from a list furnished by PMCS until a final arbitrator is selected.

*Section 4.* Either party reserves the right to arbitrate or not to arbitrate any dispute.

### 1. Is Arbitration Under the Agreement Entirely Voluntary?

Frito–Lay contends that Section 4 means that arbitration under the agreement is entirely voluntary, that is, that Frito–Lay has no obligation to arbitrate a grievance not resolved at the Board of Adjustment level.[1] Such a voluntary procedure, Frito–Lay argues, is still valuable for those cases that do proceed to arbitration.

The Union interprets Article 15 Section 4 of the agreement to mean that, after exhaustion of the preliminary grievance procedure, the party bringing the grievance may decide that the dispute is not worth the time and expense of arbitration and elect not to arbitrate. Arbitration is mandatory, however, in the sense that the party grieved *against* may not refuse to arbitrate. The Union argues that any other interpretation renders meaningless the explicit procedures set out for arbitration, which allocate the costs of arbitration and define the scope of the arbitrator's power, and the Article 3 exemption from arbitration of actions falling under traditional management rights. The Union also points out that a no-strike clause such as that in Article 4 of the Agreement is a quid-pro-quo for an agreement by the employer to arbitrate. *See Buffalo Forge Co. v. Steelworkers*, 428 U.S. 397, 407, 96 S.Ct. 3141, 3147–48, 49 L.Ed.2d 1022 (1976); *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 455, 77 S.Ct. 912, 917, 1 L.Ed.2d 972 (1957).

The drafting of the agreement is certainly unfortunate. Section 4 seems inconsistent with Section 3 and the remainder

---

**1.** Although counsel for Frito–Lay appeared to waive this contention at oral argument, we reach the same result whether or not waiver took place.

of the agreement. Both parties attempt to explain that inconsistency. We must weigh their explanations, which are both plausible, in the light of the strong policy favoring arbitration in labor disputes.

Whether Frito–Lay had agreed to submit disputes to arbitration is a matter of contract. *AT & T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). The arbitration clause in Article 15 Section 3 of the collective bargaining agreement at issue here is fairly typical; the clause exempting management rights from arbitration (Article 3) is also common. *See, e.g.*, *AT & T*, 475 U.S. at 645 & n. 2, 106 S.Ct. at 1416–17 & n. 2; *United Food & Commercial Workers v. Alpha Beta Co.*, 736 F.2d 1371, 1374 n. 5 (9th Cir.1984); *Francesco's B., Inc. v. Hotel & Restaurant Ass'n*, 659 F.2d 1383, 1385 (9th Cir.1981). It is Section 4 of Article 15, providing that the parties "reserve the right to arbitrate or not to arbitrate any dispute," which distinguishes this agreement from the ordinary.

If Section 4 makes arbitration entirely voluntary, then Union grievances not resolved at the Board of Adjustment level likely will remain unsettled, as Frito–Lay will have little incentive to agree to arbitrate where the agreement bars the Union from striking. The Union's only alternative then would be to file suit in district court under 29 U.S.C. § 185 (1982) for breach of the agreement. That would contravene the federal policy favoring arbitration, which recognizes "the greater institutional competence of arbitrators" and has as a goal the peaceful resolution of labor disputes. *AT & T*, 475 U.S. at 650, 106 S.Ct. at 1419. When the collective bargaining agreement contains an arbitration clause, there is a presumption that a particular grievance should be arbitrated " 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' " *Id.* (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)). One plausible construction of Section 4 is the one advanced by the Union, whereby the party unsuccessful in the grievance process may elect not to go forward with arbitration. Although we might reach a different result if the agreement in issue were an ordinary contract, the strong policy favoring arbitration under collective bargaining agreements compels us to reverse the district court's grant of summary judgment based on Article 15, Section 4.

2. Is the Work Transfer Arbitrable?

■ On remand, the district court will have to decide whether the specific dispute over work transfer is arbitrable under the terms of the collective bargaining agreement.

Throughout its brief, Frito–Lay insists that a motion to compel arbitration is inappropriate, as it was willing to arbitrate the dispute while reserving the defense that the dispute is not arbitrable. This argument must fail. Under Frito–Lay's interpretation, either party to a collective bargaining agreement could escape initial judicial determination of the arbitrability of a dispute by submitting to arbitration while reserving that threshold issue as a defense. Whether the dispute over work transfer is arbitrable is "undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate [the particular grievance] is to be decided by the court, not the arbitrator." *AT & T*, 475 U.S. at 649, 106 S.Ct. at 1418. It is for the district court to decide whether the work transfer dispute is arbitrable. If it so decides, Frito–Lay is precluded from asserting lack of arbitrability in the ensuing arbitration proceeding.

Frito–Lay also asserts that the merits of its case are inextricably entwined with the issue of whether it is arbitrable. As a result, it contends that if the district court determines whether work transfer is a traditional right of management covered by the exception to arbitrability contained in Section 3 of the collective bargaining agreement, it will inevitably be ruling on the merits of the dispute. It is true that "in deciding whether the parties have

agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *Id.* Nevertheless, in many cases the determination of arbitrability will appear to be uncomfortably close to a decision on the merits. A concern about just such commingling of issues in relation to a management functions clause motivated the court of appeals in *AT & T* to hold that the arbitrator should make the decision of arbitrability. The Supreme Court vacated. *Id.* at 648, 106 S.Ct. at 1418.

Justice Brennan in his concurrence, however, set forth a simple method by which the district court may decide arbitrability:

> [W]here a collective-bargaining agreement contains a standard arbitration clause and the "exception" found in the Management Functions clause is general, "judicial inquiry ... should be limited to the search for an explicit provision which brings the grievance under the cover of the [Management Functions] clause...." [citations omitted] "In the absence of any express provision excluding a particular grievance from arbitration, ... only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail...."

*Id.* at 654, 106 S.Ct. at 1421 (Brennan, J., concurring) (quoting *Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 572, 80 S.Ct. 1343, 1365, 4 L.Ed.2d 1403 (1960) (Brennan, J., concurring); *Steelworkers v. Warrior & Gulf Co.*, 363 U.S. 574, 584–85, 80 S.Ct. 1347, 1354, 4 L.Ed.2d 1409 (1960)). The court need not even consider which party's interpretation of the contract is correct. *AT & T*, 475 U.S. at 655, 106 S.Ct. at 1422 (Brennan, J., concurring).

We conclude that the procedure outlined by Justice Brennan will enable district courts to avoid the troublesome problem of ruling on the merits when deciding arbitrability. In this case, the district court must determine whether on its face there is a term of the agreement that brings the right to transfer work within the scope of the management rights clause, and, if not, whether there is the most forceful evidence that work transfer was a right of manage-

ment before the agreement was signed and thus is not subject to arbitration. If the court decides that no such evidence overcomes the strong presumption of arbitrability, it must grant the motion to compel arbitration. If the district court determines that arbitration is necessary, the ensuing arbitration provides the opportunity to scrutinize the merits of the parties' substantive contentions. The arbitrator can balance the arguments of the parties concerning Frito-Lay's right to transfer work, without loading the scales with the weight of the federal policy favoring arbitration.

## CONCLUSION

We REVERSE the grant of summary judgment and REMAND to the district court for consideration of whether the management rights clause excludes the work transfer dispute from arbitration.