**NORTHERN CALIFORNIA DRYWALL CONTRACTORS ASSOCIATION and Tom Daniels Taping, Inc., Petitioners,**

v.

**DISTRICT COUNCIL OF PAINTERS NO. 8 OF the BROTHERHOOD OF PAINTERS AND ALLIED TRADERS, AFL–CIO; et al., Respondents.**

No. C–94–2855–CAL.

United States District Court, N.D. California.

March 10, 1995.

Morton H. Orenstein, Allen M. Kato, Schachter Kristoff, Orenstein & Berkowitz, San Francisco, CA, for petitioners.

Pamela Allen, James E. Eggleston, Eggleston Siegel & LeWitter, Oakland, CA, for respondents-Dist. Council of Painters No. 8 of the Broth. of Painters and Allied Traders and Local Union 4 Intern. Broth. of Painters and Allied Traders.

David A. Rosenfeld, Van Bourg Weinberg Roger & Rosenfeld, Oakland, CA, for respondent Dist. Council No. 16 of the Broth. of Painters.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

LEGGE, District Judge.

Petitioners are an employer association and one employer member of that association. They bring this action to compel the respondent labor unions to arbitrate grievances brought by the employer under the collective bargaining agreement (CBA).[1] The employer filed ten grievances, but respondents declined to participate in the procedures to submit the grievances to an arbitrator. Respondents contend that the CBA allows only unions or union members, and not employers, to initiate grievances and proceed to arbitration.

This dispute about arbitrability is governed primarily by the CBA, which describes the jurisdiction and procedures for arbitration. This court has jurisdiction over this dispute by virtue of Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

### I.

The case is presently before the court on petitioners' motion for summary judgment. The motion was opposed, briefed, argued and submitted for decision. The court requested additional briefing on the appropriate standard for this court's review of the CBA, specifically whether the court may be depart from the face of the CBA and look at extrinsic evidence in aid of its interpretation. That briefing was concluded. The court has reviewed the CBA, the arguments of counsel and the applicable authorities.

1. The Bay Area Drywall Finishers Joint Agreement, in effect from August 1, 1993 to July 31,

Petitioners contend that the language of the grievance and arbitration clauses in the CBA permits arbitration to be initiated by the union, by an employee, or by the employer, and that the employer's right to initiate grievance and arbitration procedures is an issue of law. Respondents contend that there is a fact issue as to whether the parties *intended* that the CBA allow arbitration by an employer, and that the court should look outside of the CBA to the history of the dealings between the parties. Respondents contend that there has never been a grievance initiated by an employer in the bargaining history of CBA and its predecessor agreements. Petitioners concede that fact, but contend that it is legally irrelevant under the language of the CBA itself.

### II.

Whether a dispute is within the jurisdiction of grievance and arbitration under a CBA is generally a question of law for a court to resolve. *Westinghouse Hanford Co. v. Hanford Atomic Metal Trades Council,* 940 F.2d 513, 516 (9th Cir.1991).

The starting point is the language of the CBA, particularly the grievance and arbitration clauses. In this case, those clauses do not expressly address the question of whether an employer can or cannot initiate a grievance and arbitration. The language is nevertheless important.

Article 1 establishes a joint committee which directs an adjustment board to administer the grievance and arbitration procedures. The agreement states the following regarding the jurisdiction of the committee:

> This Committee shall hear all charges of violation of this Agreement concerning Drywall Contractor Association members and non-member signatory contractors doing drywall work.

(CBA, Art. 1, § 2.) That language, standing alone, is broad enough to encompass grievances brought by an employer.

The arbitration provisions are defined in greater detail in Article 13A:

1997.

Section 1. The parties desire to provide for a swift, practical and fair system for resolution of any and all disputed [sic] or differences as to the interpretation or application of any provision of this Agreement. The parties in this regard have determined that industrial peace is best advanced by a system that will encompass any and all such disputes through arbitration.

Section 2. To fulfill this objective, the parties herein have created the Drywall Joint Adjustment Board which is fully empowered to hear and adjudicate all differences or disputes as defined in Section 1 of this Article, whether such arises under this Agreement or the most recently expired Agreement....

Again, this language is broad enough to encompass the grievances initiated by the employer-petitioner in this case. And it can encompass any grievance brought an employer that otherwise meets the definition of "all differences or disputes as defined in Section 1 of this Article." Article 13(A) later uses the terms "Charging Party" and "Respondent" to denominate the parties to the grievance and arbitration procedures.

If the court applies the CBA alone, without looking to any other evidence, it is clear that the language of the agreement is broad enough to include grievances initiated by an employer. So the question is whether the court should go beyond that language and look to extrinsic evidence offered by respondents. On this question, the court must look to applicable case law.

### III.

Neither the parties nor the research of this court has disclosed any cases discussing this issue; that is, whether an employer may initiate grievance and arbitration under the language of a CBA. So the court must look to more general cases on the powers of a district court to interpret a CBA and to use extrinsic evidence. However, even that case authority is of limited applicability. The cases discussing the powers of courts to interpret a CBA and use extrinsic evidence generally involve the question of whether a certain *subject matter* is subject to arbitra-

tion, and not the question of *who* is entitled to use the procedures. Most, and perhaps all, of the arbitrations in the reported cases were initiated by employees or their unions; that is logical, because it is usually they who want something and the employer who does not want to give it. Nevertheless, the general principles underlying the application of arbitration agreements, and the general scope of courts' powers, have in those contexts been discussed by appellate courts.

This court takes as its guide the recent decision of this circuit in *Westinghouse*. That case, as most have, addressed the issue of whether a certain subject matter was arbitrable, and did so in the context of an arbitration initiated by a union or its employees. Regardless of that context, however, the court's opinion expresses some bright line principles decided by that court and by the United States Supreme Court.

The court in *Westinghouse* initially stated that the issue of arbitrability under a CBA is a question of contract interpretation that is reviewed *de novo.* 940 F.2d at 516. And the court said that the threshold issue of arbitrability is a question for judicial resolution. *Id.* This indicates that the issue of arbitrability in this case is one for this court to resolve, and to be resolved as a matter of law.

The circuit then cited the Steelworkers Trilogy of decisions by the United States Supreme Court, and the policies reflected by those decisions. *Id.* at 517 (quoting *United Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 568, 80 S.Ct. 1343, 1346–47, 4 L.Ed.2d 1403 (1960)). The circuit then stated, again by quoting the Supreme Court that there is a *presumption* of arbitrability. *Id.* (quoting *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986)). And the presumption carries particular force where the arbitration clause is phrased in broad and general terms, *id.,* as is the one in the present case.

The circuit then held that because of that presumption of arbitrability, the burden was upon the party opposing arbitration to show that the parties did not intend to arbitrate a particular grievance. *Id.* at 518. Again, the

circuit quoted the United States Supreme Court that where there is no "express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id.* (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 585, 80 S.Ct. 1347, 1354, 4 L.Ed.2d 1409 (1960)). In this case, there is no language in the CBA which excludes the claim of an employer from the grievance and arbitration procedures.

The circuit then turned to the question of the use of extrinsic evidence in this type of analysis. The court cited *AT & T* as authority for a district court to look at evidence outside the arbitration clause only to determine whether the grievance was one that was *excluded* from arbitration by the *terms* of an arbitration clause. 940 F.2d at 519. In *Westinghouse* the circuit determined that it should not look to externalities because the agreement contained no *language* excluding matters from the province of the arbitration clause. *Id.* at 519–21. Here there is no expressed exclusion from the broad language of the arbitration clause.

Finally, the circuit made one further examination of whether there was "forceful evidence" that the parties did not intend to arbitrate a particular grievance. *Id.* 522–23. The court held that there was not. And in this case, we are shown to no evidence other than the mere fact that in the past employers have not initiated grievance procedures. That evidence of "have not" is not directly probative of the issue "can not." It is not sufficient "forceful evidence" to create an exception to the broad language of the arbitration agreement and to require the court to engage in an evidentiary examination.

### IV.

■ This court therefore concludes that the issue in this case, the right of an employer to initiate grievance and arbitration procedures, is an issue of law that can and should be resolved from the face of the CBA. The court finds and concludes that the CBA is sufficiently broad to allow employer-initiated procedures. And there is no contention that the subject matters which the employer-peti-

tioner seeks to grieve are not arbitrable. The petition to compel arbitration should therefore be granted.

### V.

 Petitioners also seek costs and attorneys fees for this proceeding. Such an award may be made if the respondents' opposition to the arbitration was in bad faith. *United Food and Commercial Workers Union v. Lucky Stores*, 806 F.2d 1385 (9th Cir.1986). However, this court finds that there is no bad faith. Respondents' opposition to arbitration was, although held by this court to be incorrect, a reasonable position based upon the absence of employer-initiated arbitrations under this and prior agreements. The request for fees and costs is therefore denied.