
**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| WYNN RESORTS, LIMITED, a Nevada corporation, | No. 11-15841 |
| Plaintiff - Appellee, | D.C. No. 2:10-cv-00722-KJD-LRL |
| v. | MEMORANDUM[*] |
| ATLANTIC-PACIFIC CAPITAL, INC., a Connecticut corporation, | |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Nevada
Kent J. Dawson, District Judge, Presiding

Argued and Submitted October 15, 2012
San Francisco, California

Before: B. FLETCHER,[**]  HAWKINS, and MURGUIA, Circuit Judges.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**] The Honorable Betty Binns Fletcher, Senior Circuit Judge for the Ninth Circuit Court of Appeals, fully participated in the case and concurred in the judgment prior to her death.

At issue in this appeal is whether the district court correctly assumed for itself the task of deciding the issue of arbitrability and, if so, whether it properly concluded that the dispute is arbitrable.

In 2009, Atlantic-Pacific Capital, Inc. ("APC") and Wynn Resorts, Limited ("Wynn") entered into a written agreement in which Wynn engaged APC as its exclusive global placement agent to raise $1.5 billion in equity capital for gaming and hospitality assets or related securities. The parties agreed that "any dispute, controversy or claim arising from or relating to th[e] Agreement shall be submitted to and determined by binding arbitration in Las Vegas, Nevada, conducted by" JAMS. The agreement further provided that it "shall be governed by and construed in accordance with the laws of the State of New York."

In 2010, APC filed a demand for arbitration, alleging four causes of action arising out of the agreement. Wynn responded by filing a complaint in state court and requesting a stay of the arbitration proceedings. APC removed Wynn's action to federal court, after which the district court stayed the arbitration proceedings and denied APC's motion to compel.

1.     **Responsibility for Deciding the Arbitrability Issue**

"The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the '*question of arbitrability*,' is 'an issue for judicial

determination [u]nless the parties clearly and unmistakably provide otherwise.'"

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). In evaluating whether the parties so intended to provide, courts apply ordinary state-law contract principles. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Under New York law, an agreement's incorporation of arbitral rules that expressly confer upon arbitrators the power to decide the issue of arbitrability demonstrates a clear and unmistakable intent by the parties to proceed accordingly. *See, e.g.*, *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 122 (2d Cir. 2003) ("parties' intent to arbitrate arbitrability [wa]s further evidenced [under New York law] by their agreement to refer all disputes to the 'International Chamber of Commerce . . . in accordance with the rules and procedures of International Arbitration,'" which required that the arbitral body address questions of arbitrability); *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1202 (2d Cir. 1996) (same as to National Association of Securities Dealers' rules).

The agreement here incorporated the JAMS arbitration rules, stating, "[e]xcept as otherwise provided herein, arbitration shall be conducted pursuant to and in accordance with J.A.M.S.' [sic] Streamlined Arbitration Rules and

3

Procedures in effect at the time of the filing of the demand for arbitration."[1] JAMS

Rule 8(c) provides that an arbitrator shall decide the issue of arbitrability:

> Jurisdictional and *arbitrability disputes*, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, *shall be submitted to and ruled on by the Arbitrator*. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

(emphasis added). By incorporating the JAMS rules, the parties demonstrated their clear and unmistakable intent to have an arbitrator resolve the issue of arbitrability. *Gibson v. Seabury Transp. Advisor LLC*, 936 N.Y.S.2d 539, 539 (App. Div. 2012) (intent to allow arbitrator to decide issue of arbitrability demonstrated by parties' incorporation of JAMS/Endispute's commercial rules).

The inclusion of a broad arbitration provision also evinces the parties' intent to have an arbitrator decide the question of arbitrability under New York law. *See, e.g.*, *Shaw Grp. Inc.*, 322 F.3d at 121 ("a 'broad grant of power to the arbitrators' . . . evidence[s] the parties' clear 'inten[t] to arbitrate issues of arbitrability'" (quoting *PaineWebber*, 81 F.3d at 1199-1200)). The arbitration provision here is worded broadly, providing that "[a]ny dispute, controversy or claim arising from or relating

---

[1] Notwithstanding the "except as otherwise provided therein" language, the agreement evidences no intent by the parties to supersede the JAMS rules or render them inapplicable.

4

to this Agreement shall be submitted to and determined by binding arbitration . . . ." This language is similar to language found to demonstrate an intent to arbitrate arbitrability. *See, e.g.*, *id.* (provision that stated "[a]ll disputes . . . concerning or arising out of" contract shall be subject to arbitration demonstrated parties "clearly and unmistakably" agreed to have arbitrator decide arbitrability); *Smith Barney Shearson Inc. v. Sacharow*, 689 N.E.2d 884, 885, 887-88 (N.Y. 1997) (agreement stating that "any controversy" between the parties would be "settled by arbitration" was sufficiently "plain and sweeping" to indicate an intent to have arbitrator resolve issue of arbitrability).

Thus, the parties' incorporation of the JAMS rules and their employment of a broad arbitration provision establish their clear and unmistakable intent to submit the issue of arbitrability to arbitration.

**2.     Arbitrability of the Dispute**

Alternatively, even if the district court properly assumed for itself the task of deciding the issue of arbitrability, it was error to find the dispute fell outside the scope of the arbitration provision. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1267 (9th Cir. 2006) (en banc) ("The validity and scope of an arbitration clause are reviewed de novo.")

5

Where a contract contains an arbitration clause, courts apply a presumption in favor of arbitrability as to particular grievances, and the party resisting arbitration bears the burden of establishing that the arbitration agreement is inapplicable. *AT & T Techs., Inc.*, 475 U.S. at 650; *Westinghouse Hanford Co. v. Hanford Atomic Metal Trades Council*, 940 F.2d 513, 517–18 (9th Cir. 1991).

That presumption applies with particular force where, as here, the arbitration clause is phrased in broad and general terms. *Westinghouse Hanford Co.*, 940 F.2d at 517. In such circumstances, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960) (emphasis added). Stated differently, "[t]o require arbitration, [an aggrieved party's] factual allegations need only 'touch matters' covered by the contract containing the arbitration clause . . . ." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999). Accordingly, we must compare APC's allegations with the terms of the agreement's arbitration provision.

The parties' agreement provides that "any dispute, controversy or claim arising from or relating to th[e] Agreement" shall be subject to arbitration. In its arbitration demand, APC alleged that Wynn breached the agreement by (1) failing to compensate

6

APC for the $1.5 billion in investments that APC obtained but that Wynn rejected; (2) failing to compensate APC for the use and deployment of equity capital represented by the investments in an initial public offering ("IPO") initiated by Wynn's subsidiary, Wynn Macau, SA ("Wynn Macau"); (3) using sales agents other than APC (*i.e.*, the underwriters of the IPO) to effectuate investments in the investment vehicle; (4) using Wynn's subsidiary (Wynn Macau) to circumvent or adversely impact the exclusivity and rights granted to APC under the agreement; and (5) improperly terminating the agreement.

APC's claims not only relate to and touch matters covered by the agreement, they directly arise out of it. Indeed, whether APC is entitled to fees hinges upon whether, under the agreement: Wynn was obligated to accept the alleged $1.5 billion in equity capital raised by APC; proceeds from the Wynn Macau IPO constituted "equity capital" raised by APC; the underwriters for the Wynn Macau IPO qualified as "sales agents with respect to the soliciting of investors for the purposes of effectuating an Investment"; the sale of shares through Wynn Macau qualified as "conduct or services [by a Wynn affiliate] which circumvent[ed] or adversely impact[ed] the exclusivity and rights . . . granted to APC"; and APC's cessation of marketing constituted "cause" for Wynn's termination.

7

Without resolving the merits of APC's allegations, *AT & T Techs., Inc.*, 475 U.S. at 649 ("in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claim"), it is clear this dispute falls within the terms of the arbitration provision. *Simula, Inc.*, 175 F.3d at 722 (finding that arbitration clause covered claims that would require "closely examin[ing] [the parties' agreements] in order to determine whether [one] performed its contractual obligations in a manner consistent with" the agreement's terms).

We therefore vacate the district court's order and remand with instructions for the district court to (1) grant APC's motions to (a) dissolve the interim stay of arbitration proceedings, (b) vacate the ex parte injunction, and (c) compel arbitration, and (2) stay proceedings in accordance with 9 U.S.C. § 3.

Costs on appeal to APC.

**VACATED AND REMANDED.**